**INTERCARGO INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. No. 95–205.
Court No. 94–05–00269.**

United States Court of
International Trade.

Dec. 19, 1995.

Hodes & Pilon (Wayne Jarvis and Michael G. Hodes), Chicago, IL, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Rhonda K. Schnare), Washington, DC, for the defendant.

## MEMORANDUM OPINION

DiCARLO, Chief Judge:

Plaintiff, Intercargo Insurance Co., filed a complaint alleging, *inter alia*, the United States Customs Service regulation regarding delinquent sureties, 19 C.F.R. § 113.38, violates due process and is subject to the statute of limitations. Defendant moves to dismiss the complaint for lack of jurisdiction pursuant to USCIT Rule 12(b)(1). Defendant alleges four bases for this court's lack of jurisdiction over Intercargo's complaint: (1) standing; and in the alternative, (2) ripeness; (3) finality of agency action; and (4) exhaustion of administrative remedies. The court finds Intercargo's action fails to meet these jurisdictional prerequisites.

## Facts

Section 113.38, title 19, Code of Federal Regulations, addresses delinquent sureties. Under this section, the United States Customs Service may, at the district, regional, or national level, refuse to accept bonds secured by a surety, when the surety, without just cause, is significantly delinquent either in the number of outstanding bills or dollar amounts thereof. *See* 19 C.F.R. 113.38(c) (1995).

Before Customs may take such action, however, it must provide the individual or corporate surety with reasonable notice, and either an opportunity to pay delinquent amounts, provide justification for failure to pay, or demonstrate the existence of a significant legal issue justifying further delay in payment. 19 C.F.R. 113.38(c)(4). In 1989 Customs issued Treasury Decision 89–57, which recommended regional and district delinquency threshold levels for "show cause" letters and sanctions pursuant to 19 C.F.R. 113.38. T.D. 89–57, 23 Cust.Bull. 303 (1989).

Intercargo alleges it has received "at least 41 Notices threatening nationwide sanction under Section 113.38(c)(3), 2 Notices threatening regional suspension under Section 113.38(c)(2) and 3 Notices threatening district sanction under Section 113.38(c)(1)[.]" (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2.) Although Customs has not sanctioned Intercargo with the non-acceptance of its bonds, Intercargo argues it is entitled to pre-enforcement review, given the onerous burdens it incurs responding to the section 113.38(c)(4) notices, *id.* at 27, and in light of the potential impact upon its business if sanctions are imposed. Defendant moves to dismiss, contending plaintiff's action is premature. The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (1988).

## Discussion

### 1. Standing

Intercargo must satisfy three elements to establish standing under Article III of the Constitution. These elements are: (1) "injury in fact;" (2) causation; and (3) likelihood the injury can be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112

S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The "injury in fact" must be "(a) concrete and particularized; and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560, 112 S.Ct. at 2136 (citations omitted). Although a threatened injury must be "certainly impending" to rise to the level of "injury in fact," *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 1725, 109 L.Ed.2d 135 (1990) (citations omitted), no bright line test exists to distinguish a threatened injury from a conjectural one, *see Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 595 (2d Cir.1988). Such distinctions, rather, are a matter of degree, decided by the court on a case by case basis. *Id.*

Intercargo alleges two types of injury. First, Intercargo argues Customs' notices "threatening sanctions" are threats of injury which are "concrete and particularized." As Intercargo is only "one day away" from being sanctioned, plaintiff asserts it has satisfied the imminence requirement. Intercargo points to Customs' alleged "grouping" of "similar" cases as evidence of Customs' intention to sanction. Second, Intercargo contends responding to the numerous formal demand letters has imposed a substantial burden upon the surety. Intercargo claims it has expended considerable time and resources in responding to these letters, and such injury entitles it to review.

■ The court disagrees. Intercargo has failed to meet the injury-in-fact requirement. First, Intercargo cannot demonstrate that Customs will take any action. Even conceding that the Customs notices constitute valid threats of injury, such threats are too remote or speculative. Customs' "threats" are merely statements of possible courses of action, and until plaintiff receives notice under section 113.38(c)(5) (establishing effective date for sanctions), the "threat of injury" is not imminent. Mere issuance of the (c)(4) notices does not mandate that sanctions follow automatically. Customs' (c)(4) notices, rather, provide an opportunity for resolution of outstanding debts. Furthermore, Customs' alleged "grouping" tactic bears no present effect, and it is uncertain whether it will lead to sanctions at an indefinite point in the future.

Second, the court does not find Intercargo's expenditures of time and money in responding to the demand letters outside of Intercargo's ordinary responsibilities as a surety. *Cf. Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 172, 87 S.Ct. 1526, 1528, 18 L.Ed.2d 704 (1967) (citing $42,000,000 cost for compliance with regulation as substantial hardship). Resolution of these debts at the administrative level furthers judicial efficiency and serves the purposes of the administrative process. *See Bethlehem Steel Corp. v. Envtl. Prot. Agency,* 669 F.2d 903, 907 (3d Cir.1982) (finding "judicial forebearance demonstrates a proper respect for administrative autonomy and allows the agency to function more efficiently and responsibly.")

Intercargo's action seeks to challenge the propriety of a sanction yet to be imposed. Intercargo's injury, therefore, must be derived from the sanction itself. Intercargo merely has blended the injury from the perceived threat of sanctions with the potential, yet undetermined, effect of the sanctions. Accordingly, the court finds Intercargo has failed to meet the injury-in-fact requirement of standing, and needs not address the issues of redressability or causation.

**2. Ripeness & Futility**

Defendant further argues, in the alternative, that Intercargo has failed to establish ripeness or demonstrate the futility of exhaustion of administrative remedies. In resolving these issues, the court is essentially determining whether plaintiff warrants pre-enforcement review.

■ The purpose behind the doctrines of ripeness and exhaustion is to protect courts from premature involvement in administrative proceedings, and to protect agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). Application of the ripeness doctrine requires an independent evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515; *see also,*

*Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 1523–24, 18 L.Ed.2d 697 (1967); *Gardner,* 387 U.S. at 170, 87 S.Ct. at 1528; *Ciba–Geigy Corp. v. United States Envtl. Prot. Agency,* 801 F.2d 430, 434–36 (D.C.Cir.1986).

Intercargo alleges taking legal action after Customs moves to impose sanctions would irreparably harm the surety, meeting the second prong of the *Abbott Laboratories* test. As a publicly-traded firm, Intercargo would be sensitive to news of the sanction. The market may lose confidence in Intercargo's stock, and Intercargo is accountable to its existing shareholders who may suffer from a decline in the company's stock price.

Intercargo also claims it would lose business. Customs presents Intercargo with notice of the sanction five days before Customs suspends acceptance of Intercargo's bonds. Notice is also given to the importing public. 19 C.F.R. § 113.38(c)(5). Intercargo argues it cannot undo the damage caused by distribution of the notices. Although Intercargo could seek a temporary restraining order during the five-day notice period to block the imposition of sanctions, Intercargo presumably believes importers, unsure of the duration of the sanction and unaware of the filing of a temporary restraining order, would be hesitant to use Intercargo to post their bonds. Moreover, Intercargo argues its allocation of "costly man-hours" to respond to Customs' "threats" would also satisfy the hardship requirement of *Abbott Laboratories.*

Finally, Intercargo asserts its legal claims against section 113.38 and T.D. 89–57 are fit for judicial review pursuant to the first prong of *Abbott Laboratories.* In applying the analysis pursuant to that prong, Intercargo contends because the issues are purely legal, Customs' challenged regulation is formal, compliance is expected, the regulation purports to be authorized by statute, and Customs has direct authority to enforce it, *Abbott Laboratories,* 387 U.S. at 151–52, 87 S.Ct. at 1516–17, pre-enforcement review would be proper.

■ The court is unconvinced. Intercargo must overcome a heavy burden in demonstrating its losses are sufficient to sustain pre-enforcement review. *See Gardner, supra.* Intercargo's claims of losses of time and resources in responding to Customs' letters are not outside of Intercargo's responsibilities as a surety. Further, given the uncertain nature of the regulation's impact on Intercargo's reputation and stock price, and the questionableness of whether Customs will sanction Intercargo at all, the court finds Intercargo has failed to overcome *Abbott Laboratories'* threshold hardship requirements.

Moreover, Intercargo's legal claims are premature. Whereas both *Abbott Laboratories* and *Ciba–Geigy* involved final agency orders requiring a party to alter its "primary conduct" (changing labels on prescription drugs and pesticides), section 113.38 has no such effect on Intercargo's day-to-day affairs. As the Supreme Court similarly found in *Federal Trade Commission v. Standard Oil Co. of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), Customs' (c)(4) letters only represented a "threshold determination that further inquiry [would be] warranted," and are not definitive in a comparable manner as the regulations in *Abbott Laboratories.* 449 U.S. at 241, 101 S.Ct. at 493. The court finds *Toilet Goods,* a companion case to *Abbott Laboratories,* provides a more appropriate example.

In *Toilet Goods,* the Supreme Court found the need for examining the regulation as applied, rather than in the abstract, outweighed the appropriateness of pre-enforcement review. *Toilet Goods,* 387 U.S. at 163–164, 87 S.Ct. at 1524–25. The Supreme Court distinguished *Toilet Goods* from *Abbott Laboratories* and *Gardner.* The Court found the impact of the regulation in *Abbott Laboratories* and *Gardner* would be felt immediately by those subject to it in conducting their day-to-day affairs. The discretion granted to the Agency in *Toilet Goods*— whether or not to suspend a company's certification status for blocking inspection of its facilities—made the impact of the regulation in that case uncertain.

Although Intercargo could be in danger of being sanctioned at some point in the future, Customs' decision to impose sanctions

against Intercargo is still discretionary. The plaintiffs in *Abbott Laboratories* had no such uncertainty as to the effect of their regulation. Intercargo can only claim, with certainty, that the cost of responding to Customs' c(4) notices weighs heavily on company resources. It is speculative whether Intercargo will ever be sanctioned, and if it is, whether the (c)(5) notice of sanctions would result in substantial pecuniary loss. As the basis of Intercargo's claim turns on when Customs decides to sanction the surety, pre-enforcement review would not assist the court in resolution of Intercargo's claims.

Moreover, unlike the cases cited by Intercargo where exhaustion of administrative remedies was futile, Customs is not interpreting the actions of a separate federal agency, or bound by a direct legislative mandate to sanction Intercargo; rather the decision is within Customs' realm of authority to decide. Until Customs makes a decision to sanction Intercargo, Intercargo's action remains premature.

### 3. Finality

Finally, defendant argues that Customs has not made a protestable final decision. An agency action must be final before it is judicially reviewed under the Administrative Procedure Act. 5 U.S.C. § 704 (1994). Intercargo argues section 113.38 and Treasury Decision 89–57 constitute such a final agency action. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 30–31.) According to Intercargo, the § 113.38(c)(4) notices themselves indicate the next step is a notice of suspension under § 113.38(c)(5). As with its ripeness argument, plaintiff asserts *Abbott Laboratories* and *Ciba–Geigy* support its demand for "pre-enforcement agency action," and hence Intercargo should be able "to obtain a declaration of its rights and an interpretation of the validity of Section 113.38." (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 20.)

█ Intercargo is in error. Subsections 113.38(c)(4), (5) provide, in pertinent part,

(4) *Notice of surety.* The appropriate Customs officer *may* [refuse to accept a surety's bonds] only after the surety has been provided reasonable notice with an opportunity to pay delinquent amounts, provide justification for the failure to pay, or demonstrate the existence of a significant legal issue justifying further delay in payment.

(5) *Review and final decision.* After a review of any submission made by the surety under paragraph (c)(4) of this section, if the appropriate Customs officer is still *of the opinion* bonds secured by the surety *should* not be accepted, written notice of the decision shall be provided to the surety ..., at least five days before the date that Customs will no longer accept the bonds of the surety.

19 C.F.R. § 113.38(c)(4), (5) (1995) (emphasis added). These subsections demonstrate the exact opposite of Intercargo's contentions. Customs has yet to take any action against Intercargo, and issuance of the (c)(4) letters only provides Intercargo with notice that Customs "may" take such action in the future if Customs is "of the opinion" that Intercargo's bonds "should" not be accepted. Further, the regulation cannot serve as the appropriate final agency action here, as it only serves to provide sureties with guidance of what would constitute such an action or decision.

Further, Treasury Decision 89–57 also reaffirms the discretionary nature of sanctions. It provides, in pertinent part,

To promote uniformity and equitable treatment of sureties nationwide, Customs Headquarters has set thresholds for the issuance of show cause letters to sureties and eventual nonacceptance of bonds at the district or regional level if a satisfactory response is not provided to a show cause letter. The thresholds are the minimum number of cases and/or dollar amounts at which a district or region would consider possible sanction action against a surety. These, of course, are not requirements that districts and regions must initiate show cause letters when the thresholds are reached. Moreover, in all previous sanction cases, the number and dollar amounts of the delinquent cases far exceeded these thresholds.

. . . .

It is the position of the Customs Service that show cause letters and possible sanction action should be necessary only in

exceptional cases. Sureties are provided with more than adequate opportunity to petition and settle cases during the case processing cycle.

T.D. 89–57, 23 Cust.Bull. at 304 (1989). That Customs has not imposed any sanctions against Intercargo supports this interpretation. While Customs may have failed to act in conformity with T.D. 89–57 in its issuance of show cause letters, this issue is not before the court. Intercargo's complaint, rather, challenges the potential injury Intercargo may incur from being sanctioned and whether such sanction would be improperly imposed. Accordingly, the c(4) letters cannot be the source of the final agency action, because their issuance is not the action challenged. Even assuming Customs' disregard of the Treasury Decision may contribute to the uncertainty of whether Intercargo may be sanctioned, Customs still possesses the discretion to determine whether it should withhold acceptance of Intercargo's bonds. Accordingly, the court finds the lack of a final agency action makes review of this case premature.

### Conclusion

Defendant's motion to dismiss is granted. Plaintiff's motion for summary judgement is denied.