Slip Op. 00 - 34

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x

WARNER-LAMBERT COMPANY,                    :

                  Plaintiff,   :

           v.                    :   Court No. 00-01-00001

                          :

THE UNITED STATES; AMERICAN MOTORISTS
INSURANCE COMPANY and C.A. SHEA & COM-:
PANY,

                          :

               Defendants.   :
                          :

- - - - - - - - - - - - - - - - - - - x

Memorandum

[Application(s) for preliminary injunction denied;
 motion of defendant United States to dismiss granted.]


                           Decided:  April 4, 2000


      Rode & Qualey (Patrick D. Gill and Eleanore Kelly-Kobayashi)
for the plaintiff.

      David W. Ogden, Acting Assistant Attorney General; Joseph I.
Liebman, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (James A. Curley); and Office of Assistant Chief Counsel,
U.S. Customs Service (Jeffrey E. Reim), of counsel, for defendant
United States.

      Grunfeld, Desiderio, Lebowitz & Silverman LLP (Edward B. Ack-
erman, Laurence M. Friedman and Michael T. Cone) for defendant
American Motorists Insurance Company.

      Law Offices of Michael P. O'Connor (Michael P. O'Connor) for
defendant C.A. Shea & Company.


        AQUILINO, Judge:  The plaintiff commenced this action

with the simultaneous filing of a summons and complaint, plus

an application for a temporary restraining order and preliminary

injunction, averring, among other things, that the U.S. Customs
Service had recently

> threatened to impose sanctions against plaintiff
> which would include, *inter alia*, the loss of im-
> mediate delivery privileges for <u>all</u> merchandise
> imported into the United States.  Such action
> would have a detrimental impact on the company,
> one of the largest pharmaceutical manufacturers
> in the United States and the world. As is attest-
> ed to in . . . the affidavit . . . attached to
> the Application for a Temporary Restraining Order
> and Order to Show Cause . . ., the imposition of
> sanctions is imminent.[1]

Government counsel were afforded an immediate opportunity to
dispel the actuality of such a threat.  When they proved, at
first blush, unable to do so, this court granted the requested
temporary restraining order, which the government then formal-
ly moved to extend, pending presentation of all the facts and
circumstances underlying this action and its resolution by the
court.

                                  I

        At its commencement, the plaintiff purported to be in
the middle of an "ongoing dispute" with Customs over the proof
necessary to satisfy the Service that pharmaceuticals imported
for clinical and laboratory testing under subheading 9813.00.30
of the Harmonized Tariff Schedule of the United States had been
exported or destroyed so as to satisfy the conditions of the

---

[1] Memorandum in Support of Motion for a Preliminary Injunc-
tion, pp. 1-2 (emphasis in original).

bond(s) posted in regard thereto.[2] The verified complaint posits administrative cases 1996-3801-02071401, 1997-3801-00350501, 1998-3801-20027401, 1998-3801-20028001, 1998-3801-20045401, 1998-3801-20078601, 1998-3801-20102601, 1998-3801-20146601, 1998-3901-20099101, 1998-3801-20254401, 1998-3801-20222901, 1998-3801-20289201, 1999-2304-20109801, 1999-4601-20208501, and 1999-3801-20235801 as involving claims for liquidated damages against the plaintiff.

At the hearing held in open court on plaintiff's application for a preliminary injunction, the government presented evidence as to each of the afore-numbered matters, essentially via Customs Service *Fines, Penalties & Forfeitures* officers ("FPFO") from the ports of Detroit, Michigan and Laredo, Texas. The former considers the cases bearing the eight-digit suffixes 00350501, 20099101, 20254401, 20289201 and 20208501 to be closed. See Declaration of Darrell E. Woodard, paras. 10, 34, 17, 19, 35. With regard to those matters partially numbered 20078601, 20102601, 20222901 and 20235801, it is reported that Customs had claimed liquidated damages in each,

> alleging a breach of a [Temporary Importation Bond or] TIB . . . due to Warner-Lambert's failure to 1) export or destroy the imported merchandise prior to expira-

---

[2] Id. at 1. American Motorists Insurance Company ("AMICO") and C.A. Shea & Company have been alleged to be plaintiff's surety and its agent, respectively, and to be indispensable to maintenance of the status quo herein, ergo their impleading as parties defendant and coverage by the requested injunctive relief.

tion of the bond period, and/or 2) provide timely proof to Customs [in regard thereto[3],]

that the plaintiff importer has filed petitions for relief therein, and that the Service has yet to resolve any of them. See id., paras. 14, 15, 18, 20, 25.  In matter 20146601, involving a claim for $4,080.00, a petition was filed, which led to reduction of that amount to $100, albeit as yet unpaid by the plaintiff and thereby deemed delinquent by Customs.  See id., para. 16.  Petitions were also filed in cases 02071401, 20027401, 20028001 and 20045401.  Each was denied, and the Service takes the position that liquidated damages are due and owing.[4]

Finally, according to the Laredo FPFO, the bond period in matter 20109801

> expired on January 19, 1999. Warner-Lambert and AMICO have submitted no documentation to Customs to cancel this bond nor . . . petitioned for relief. This claim is now considered delinquent.

Declaration of Charles E. Dickinson, para. 8.  Nonetheless, this declarant further swears as follows:

> 10.  The claim referenced in paragraph 8 above has not been referred to the Department of Justice for initiation of collection actions.

* * *

> 12.  To date, importer sanction proceedings have not been initiated by Customs in connection with this de-

---

[3] Declaration of Darrell E. Woodard, para. 21.

[4] See id., para. 9 and U.S. Defendant's Exhibit B-2; para. 11 and U.S. Defendant's Exhibit C; para. 12 and U.S. Defendant's Exhibit D; para. 13 and U.S. Defendant's Exhibit E.

linquent claim.  In that regard, notification of pro-
posed sanctions has not been issued to Warner-Lambert.
In addition, importer sanctions will not be initiated
in the future in connection with this claim.

13.  As FPFO for the Port of Laredo, I have not ini-
tiated surety sanction procedures against AMICO in
connection with the delinquent claim referenced in
paragraph 8 above.  Specifically, a "Preliminary Show
Cause" notification has not been issued to AMICO in
connection with this delinquent claim.

Id., paras. 10, 12, 13.

The Detroit FPFO makes similar representations with

regard to the five numbered claims, supra, deemed now delinquent

by him, e.g.:

To date, importer sanction proceedings have not been
initiated by Customs in connection with these five
claims.  In that regard, notification of proposed
sanctions . . . has not been issued to Warner-Lambert.
In addition, importer sanctions will not be initiated
in the future in connection with these five claims.

Declaration of Darrell E. Woodard, para. 30(f).  As for the

surety, he declares:

. . . I have not initiated [] surety sanction proced-
ures against AMICO . . . in connection with the five
delinquent claims referenced . . . above. Specifically,
a "Preliminary Show Cause" notification . . . has not
been issued to AMICO in connection with these five de-
linquint claims.[5]

---

[5]  Id., para. 33.  Nevertheless, the plaintiff has brought
to the court's attention that, just prior to this declaration
and its submission at the hearing, a Customs Notice of Penalty
or Liquidated Damages Incurred and Demand for Payment had indeed
issued to AMICO on Form 5955A in the amount of $28,912.96 for
case 1998-3801-20102601. On the other hand, letters from govern-
ment counsel and Mr. Woodard dated March 3 and 6, 2000, respect-
ively, advise that the aforesaid demand in the latter's name had
been "sent in error" and thus been rescinded.  Cf. Defendant AM-
ICO's Answer and Counterclaim, para. 44 and Exhibit C.

Given these representations on the record, the court no longer can discern the kind of threat of immediate, irreparable injury necessary to grant or to sustain the extraordinary equitable relief that is a temporary restraining order or preliminary injunction.  And this and other courts have long held that failure to show such threat is ground itself to deny that relief, whatever an applicant's showing with regard to likelihood of success on the merits, the public interest, and the balance of harm among the parties[6].  See, e.g., American Steve-

---

[6] The court notes in passing that defendant AMICO has interposed an answer to plaintiff's complaint alleging, among other things:

> 50.  It is beyond dispute that Customs has demanded payment from AMICO on the bonds.
>
> 51.  It is beyond dispute that Warner-Lambert executed [an] indemnification agreement whereby it promised to post collateral security upon proof of a demand by Customs.
>
> 52.  Warner-Lambert's challenge to Customs' demand has no bearing on determining Warner-Lambert's obligation to place sufficient funds with AMICO, as it is irrelevant whether Warner-Lambert believes AMICO will ultimately be liable for the demands asserted by Customs.  In fact, it is this very uncertainty which the collateral security clause is meant to address.
>
> * * *
>
> 56.  The language of the indemnity agreement is clear and unequivocal:  Warner-Lambert is required to indemnify AMICO for "any and all liability, claim, demand, loss, damage, expense, cost and **attorney's fees** which it shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim . . ." (emphasis added).

Whereupon AMICO prays for entry of judgment in its favor, while at the same time joining in plaintiff's application for a pre-

(footnote continued)

doring, Inc. v. U.S. Customs Service, 18 CIT 331, 335, 852 F.

Supp. 1067, 1071 (1994), and cases cited therein.

II

In addition to opposing injunctive relief, the govern-

ment has interposed a motion to dismiss the complaint on the

grounds of lack of subject-matter jurisdiction, mootness, and

failure to exhaust administrative remedies.

Of course, matters that are moot do not entail any live

case or controversy within the meaning of Article III of the U.S.

Constitution, leaving federal courts organized thereunder with no

---

liminary injunction against Customs -- drawn to protect its in-
terests as surety.  It states, in part, that this

> measure is warranted because it will relieve AMICO of
> the threat of irreparable economic harm if it is sanc-
> tioned, as well as the threat of a lengthy and costly
> administrative proceeding, the existence and outcome
> of which could be highly prejudicial to the company's
> business and reputation.

Defendant AMICO's Response to Plaintiff's Motion for a Prelimi-
nary Injunction, p. 4.  But economic injury is not necessarily
"irreparable".  See, e.g., American Stevedoring, Inc. v. U.S.
Customs Service, 18 CIT 331, 335, 852 F.Supp. 1067, 1071 (1994),
citing Sampson v. Murray, 415 U.S. 61 (1974); Wisconsin Gas Co.
v. Federal Energy Regulatory Comm'n, 758 F.2d 669 (D.C. Cir.
1985); Arbor Foods, Inc. v. United States, 8 CIT 355, 600 F.Supp.
217 (1984).

The answer filed on behalf of defendant C.A. Shea & Company
avers that the plaintiff has failed to state a claim upon which
relief can be granted since the company is not a proper party to
this action.  That is, the company's executive vice-president at-
tests that, contrary to plaintiff's pleadings, C.A. Shea is not
an agent of AMICO and "does not sign, execute or bind and bond
on behalf of any surety company."  Affidavit of Lee V. Barther,
paras. 3, 4.  See Defendant AMICO's Response to Plaintiff's Mo-
tion for a Preliminary Injunction, p. 9 ("AMICO has no objection
to C.A. Shea & Company being dismissed from the instant action").

authority to act in regard thereto.  See generally Warth v. Seldin, 422 U.S. 490 (1975), and cases cited therein.  According to the record now developed herein, the administrative cases numbered 1997-3801-00350501, 1998-3901-20099101, 1998-3801-20254401, 1998-3801-20289201, and 1999-4601-20208501 are apparently closed and thus moot.

On the other hand, the report of Customs at bar is that the matters numbered 1998-3801-20078601, 1998-3801-20102601, 1998-3801-20222901, and 1999-3801-20235801 involve petitions still under active agency consideration, which status implicates the constitutional doctrine of ripeness under Article III.  That is, in general, only *ripe* matters should be heard and decided by federal courts.[7]  Indeed, Congress, in the exercise of its authority under that article, has provided in its Customs Courts Act of 1980 that, in an unspecified action like this, "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. §2637(d).  As has been pointed out, the purpose of this authority

> is to protect courts from premature involvement in administrative proceedings, and to protect agencies "from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

---

[7] See, e.g., Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1580 (Fed.Cir. 1993), cert. denied, 512 U.S. 1235 (1994). Administrative case 1998-3801-20146601, mitigated to the as-yet-unpaid $100, implicates another well-established principle, namely, *de minimis non curat lex*. See, e.g., Wisconsin Dep't of Revenue v. Wm. Wrigley, Jr., Co., 505 U.S. 214, 231-32 (1992); United States v. Cavalier Shipping Co., 60 CCPA 152, C.A.D. 1103, 478 F.2d 1256 (1973).

Intercargo Ins. Co. v. United States, 19 CIT 1435, 1437, 912 F.
Supp. 544, 546 (1995), aff'd, 129 F.3d 135 (Fed.Cir. 1997), quo-
ting Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).

        In light of the record now established, the court
finds it appropriate that the plaintiff be required to exhaust
fully its administrative remedies.  The finding applies to all
those aforenumbered matters not administratively moot or judi-
cially ripe, which leaves only cases numbered 1996-3801-02071401,
1998-3801-20027401, 1998-3801-20028001, 1998-3801-20045401, and
1999-2304-20109801 open for any further discussion, given the
representations, supra, that Customs considers the claims there-
in due and owing.  In fact, plaintiff's application for injunc-
tive relief itself

> concedes that the claim made in . . . Case No. 1999-
> 2304-20109801[] was properly made because the material
> was not exported or destroyed within the required time.
> The liquidated damages in the amount of $11,046.58 is
> [sic] being tendered to Customs.

Affidavit of Thomas Czubak, para. 13.  See Plaintiff's Complaint,
para. 15. With regard to the other four matters, the primary con-
cern, as sworn to by the plaintiff in its complaint, is stated to
be as follows:

> 30.  The imposition of sanctions on plaintiff
> while the challenge to the liquidated damages asess-
> ments are [sic] pending in the Court of International
> Trade would have a severe disruptive effect on plain-
> tiff's importing operations and testing facilities.
>
> 31.  Plaintiff is one of the largest pharmaceuti-
> cal manufacturers in the United States, and the world,

and must be able to promptly and efficiently test experimental drugs on a continuing basis; the imposition of sanctions would have a detrimental impact on all of plaintiff's entries, which number in the thousands annually.

32.  The imposition of sanctions against plaintiff would interrupt the continuing manufacturing and supply of its pharmaceutical and non-prescription drug products and potentially limit or prevent their availability to patients and consumers who use them.

See Affidavit of Thomas Czubak, paras. 26-28.  See also id., paras. 5, 16; Plaintiff's Complaint, paras. 5, 6.  But Customs now denies any intent to seek sanctions[8] as to the claims deemed delinquent.  See Declaration of Darrell E. Woodard, para. 30(f), supra.

This disclaimer thus raises the necessary question as to what, if any, actionable injury is being suffered by the plaintiff, which like any other federal complainant, must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984), citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). See Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 120 S.Ct. 693, 704 (2000):

---

[8] The court notes in passing that one of plaintiff's ethical pharmaceutical products singled out in its motion papers as possibly threatened by the government, namely, Rezulin® (troglitazone), is now being removed from the market, albeit on grounds not related hereto.  See F.D.A. Withdraws Drug for Diabetics, Citing Health Risks, N.Y. Times, March 22, 2000, at A1, col. 1.

　　　　In Lujan v. Defenders of Wildlife, 504 U.S. 555,
560-561 . . . (1992), we held that, to satisfy Article
III's standing requirements, a plaintiff must show (1)
it has suffered an "injury in fact" that is (a) con-
crete and particularized and (b) actual or imminent,
not conjectural or hypothetical; (2) the injury is
fairly traceable to the challenged action of the de-
fendant; and (3) it is likely, as opposed to merely
speculative, that the injury will be redressed by a
favorable decision.

Here, this court cannot, and therefore does not, conclude that
the plaintiff now satisfies these requirements for proceeding
with this action.  Cf. Intercargo Ins. Co. v. United States, 19
CIT 1435, 912 F.Supp. 544 (1995), aff'd, 129 F.3d 135 (Fed.Cir.
1997).

　　　　Of course, this conclusion does not leave Warner-
Lambert without any judicial remedy.  Indeed, as the plaintiff
itself points out, in United States v. Utex Int'l Inc., 857 F.2d
1408, 1414 (Fed.Cir. 1988), the court held that it was unneces-
sary for a surety to pay liquidated damages and then file a pro-
test thereof under 19 U.S.C. §1514 before defending itself in a
collection action brought against it by Customs pursuant to 28
U.S.C. §1582.  That is, as subsequently explained in United
States v. Toshoku America, Inc., 879 F.2d 815, 818 (Fed.Cir.
1989), proof that an importer has complied with the terms and
conditions of its bond "has traditionally been and still remains
a complete defense to a collection suit brought on the bond",
with the court of appeals professing to have held in Utex that
"an assessment of liquidated damages is not a 'charge or exac-

tion' that must be challenged by protest under 19 U.S.C. §
1514".

                                    III

        Whether or not the grant of temporary equitable relief
to date has aided in sorting out the parties' differences, or
allayed genuine concerns the plaintiff may have had with regard
to its enumerated experimental cases and its worldwide business,
the court in the light of the foregoing facts and circumstances
is required now to deny the application(s) for a preliminary
injunction and to grant the U.S. defendant's motion to dismiss
plaintiff's complaint.  Judgment will enter, dismissing this
action in its entirety.[9]

Decided:  New York, New York
          April 4, 2000


                    _____
                                    Judge


_____

        [9] The court notes in passing that, while this dismissal
is not based upon lack of subject-matter jurisdiction under 28
U.S.C. §1581(i), which issue the court has not found necessary
to reach herein, when a main action is dismissed, ancillary
claims without an independent basis of jurisdiction, which is
the case here, also fail.  See, e.g., Old Republic Ins. Co. v.
United States, 14 CIT 377, 741 F.Supp. 1570 (1990). Cf. 6 Wright
& Miller, Federal Practice §1433 (1990).