# United States Court of Appeals for the Federal Circuit

04-1085, -1109

NEC SOLUTIONS (AMERICA), INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

Robert P. Parker, Paul, Weiss, Rifkind, Wharton & Garrison LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief was Petra A. Vorwig.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, of Washington, DC; and, Barbara S. Williams, Attorney in Charge, International Trade Field Office, United States Department of Justice, of New York, New York. Of counsel on the brief were Chi S. Choy, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York, and William J. Kovatch, Jr., Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Lewis E. Leibowitz, Hogan & Hartson L.L.P., of Washington, DC, for amicus curiae. With him on the brief was Lorane F. Hebert. Of counsel on the brief was Kathleen F. McGuigan, JCPenney Purchasing Corporation, Inc., of Plano, Texas.

Appealed from: United States Court of International Trade

Chief Judge Jane A. Restani

# United States Court of Appeals for the Federal Circuit

04-1085, -1109

NEC SOLUTIONS (AMERICA), INC.,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:  June 10, 2005

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

The United States appeals from a decision of the United States Court of International Trade granting summary judgment in favor of NEC Solutions (America), Inc. ("NEC").[1]  <u>NEC Solutions (Am.), Inc. v. United States</u>, No. 01-00147 (Ct. Int'l Trade July 9, 2003) ("<u>NEC</u>").  The Court of International Trade found that the United States Customs Service ("Customs") failed to liquidate entries of television sets manufactured in Japan within the statutory six-month period after receiving an electronic notice of the removal of a court-ordered suspension of liquidation and therefore, the entries should be deemed liquidated at the rate asserted at entry pursuant to 19 U.S.C. § 1504(d).  The government asserts that the Court of International Trade erred in finding that the

e-mail constituted notice because it was ambiguous as to its purpose and silent as to the applicable duty rate. We disagree and hold that the e-mail was sufficient to constitute notice under 19 U.S.C. § 1504(d).

NEC cross-appeals the grant of summary judgment by the Court of International Trade in favor of the government with respect to later entries of television sets. NEC argues that court opinions received by attorneys with the Department of Justice ("Justice") gave sufficient notice to Customs that the suspension had been lifted. We disagree and find that service on attorneys at Justice is insufficient notice to inform Customs of the removal of the suspension of liquidation. We affirm.

## I. BACKGROUND

From April 1, 1982 until February 28, 1989, NEC manufactured color television sets in Japan and imported the sets into the United States. At the time of their entry into the United States, all television sets imported from Japan were subject to a 1971 antidumping order. The Department of Commerce ("Commerce") conducted several administrative reviews of the antidumping order over this period.[2] For the television sets imported by NEC through 1987 (the fifth through eighth administrative periods),

_____

[1]  NEC Solutions (America), Inc., previously known as NEC Technologies, Inc., is the successor-in-interest to NEC Home Electronics (USA), Inc.
[2]  The entries at issue were imported by NEC during the following administrative review periods:

| Administrative Review Period | |
|---|---|
| 4th (moot) | April 1, 1982 to March 31, 1983 |
| 5th | April 1, 1983 to March 31, 1984 |
| 6th | April 1, 1984 to February 28, 1985 |
| 7th | March 1, 1985 to February 28, 1986 |
| 8th | March 1, 1986 to February 28, 1987 |
| 9th | March 1, 1987 to February 29, 1988 |
| 10th | March 1, 1988 to February 28, 1989 |

Commerce consolidated these entries into a single administrative review where NEC subsequently challenged Commerce's calculation of the dumping margin. <u>NEC Home Elecs., Ltd. v. United States</u>, 18 Ct. Int'l Trade 336 (1994), <u>aff'd in part, rev'd in part</u>, 54 F.3d 736 (Fed. Cir. 1995). On July 21, 1999, the Court of International Trade sustained the revised antidumping margin as redetermined by Commerce. On September 19, 1999, sixty days after issuance, that court order became final when the time to appeal expired without the filing of an appeal, and consequently, the injunction suspending liquidation of these television sets (the fifth through eighth administrative periods) was lifted. Commerce failed to publish notice of that court order within ten days as required by 19 U.S.C. § 1516a(e).

On June 23, 2000, Commerce sent an e-mail to Customs stating:

1. Records at the Department of Commerce indicate that <u>there should be no unliquidated entries of television receivers monochrome and color, from Japan</u> (A-588-015) held by Customs for antidumping purposes during the period 03/10/1971 through 02/28/1999, with the exception of the period noted below.

2. With respect to unliquidated entries of television receivers monochrome and color, from Japan that are the subject of court ordered injunction, the Commerce Department continues to be enjoined from ordering the liquidation of these entries until the court disposes of the litigation or dissolves the injunctions. In the case of the antidumping duty order of the television receivers monochrome and color, from Japan (A-588-015) this litigation covers subject merchandise produced or exported by Sanyo Electric (A-588-015-010) which was entered, or withdrawn from warehouse, for consumption during the period 04/01/1982 through 03/31/1983.

3. Therefore, with the exception of subject merchandise produced or exported by Sanyo Electric (A-588-015-010) from Japan entered, or withdrawn from warehouse, for consumption during the period 04/01/1982 through 03/31/1983, <u>if any Customs import office is suspending liquidation of entries of this merchandise for antidumping purposes for period 03/10/1971 through 02/28/1999, Customs officers should, within 20 days of receipt of this message, report the following information</u> on an entry-specific basis to HQ OAB via ACS e-mail: e-mail message number, AD/CVD case number, entry number(s), date of entry, manufacturer,

shipper/seller and, importer. Also identify the port where the entry is held, and provide the name and telephone number of the product specialist at the port that will be responsible for finalizing reported entries. HQ OAB will forward this information to the appropriate office at the U.S. Department of Commerce. Negative reports are not required.

4. If there are any questions regarding this matter by Customs officers, please contact via e-mail, through the appropriate supervisory channels, other government agency liaison, using the attribute "HQ OAB." Importing public and interested parties should contact Jack Dulberger or Sheila Forbes at 202-482-5505 or 202-482-4697, AD/CVD Enforcement Group II, Office 4, Import Administration, International Trade Administration, Department of Commerce.

5. There are no restrictions on the release of this information.

(emphases added). On the same day, Customs also posted this e-mail message on the Customs Electronic Bulletin Board, which is publicly accessible. Customs responded to the e-mail, indicating that there were entries of NEC that were unliquidated, but Customs did not liquidate the entries at that time. On January 10 and 11, and March 26, 2001, Commerce sent e-mail messages to Customs designated "not to be disclosed to the public," stating that the suspension of liquidation was lifted and that the entries should be liquidated at specified antidumping duty rates. Between February and June 2001, Customs liquidated the entries of NEC.

For the television sets imported between March 1, 1987 and February 28, 1989 (the ninth and tenth administrative periods), the suspensions of liquidation were lifted by agreement of the parties as part of separate proceedings in 1993 and 1996. There was no formal publication regarding the removal of the suspensions of liquidation. On April 28, 2000 and May 15, 2000, several years after the removal of the suspensions of liquidation, Commerce notified Customs of the removal of suspensions in an e-mail with specific liquidation instructions. Between June and September 2000, Customs liquidated the entries.

Thereafter, NEC filed twenty protests in regards to the liquidation of entries for the fifth through eighth administrative periods, and an additional nine protests in regards to the liquidation of entries for the ninth and tenth administrative periods. Customs denied NEC's protests, and, on April 26, 2001, NEC filed this action in the Court of International Trade. NEC and the government filed cross-motions for summary judgment. On July 9, 2003, the Court of International Trade granted summary judgment to NEC as to entries during the fifth through eighth review periods and to the government as to entries during the ninth and tenth review periods. It found that the June 23, 2000 e-mail sent from Commerce to Customs "provided notice, for the purposes of § 1504(d), that the court order suspending liquidations of entries during the fifth through eighth review periods has been lifted." NEC, slip op. at 17. Thus, the Court of International Trade concluded that "[b]ecause Customs did not liquidate within six months, the entries should have been deemed liquidated. NEC is entitled to a refund of any additional duties imposed." Id.

The Court of International Trade, however, rejected NEC's argument on its cross motion for summary judgment that notification to attorneys at Justice created constructive notice to the government for the television sets imported in the ninth and tenth administrative periods, noting that this court "squarely rejected this argument, finding that service of an opinion on the Justice Department was not service on Customs because '[t]he Justice Department represented Commerce.'" NEC, slip op. at 16-17 (citing Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1379 (Fed. Cir. 2002)). This appeal ensued.

We have jurisdiction to hear an appeal from a final decision of the United States Court of International Trade under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of Review

We review decisions of summary judgment <u>de novo</u>. <u>Rheem Metalurgica S/A v. United States</u>, 160 F.3d 1357, 1358 (Fed. Cir. 1998) ("We review <u>de novo</u> a grant of summary judgment by the Court of International Trade."); <u>Guess? Inc. v. United States</u>, 944 F.2d 855, 857 (Fed. Cir. 1991) ("deciding <u>de novo</u> the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist").

### B. Fifth through Eighth Reviews

Section 1504(d) of Title 19 of the United States Code requires Customs to liquidate entries within six months of receiving "notice" that a suspension of liquidation of such entries has been removed. To be sufficient for purposes of § 1504(d), the "notice" must be "unambiguous" that the suspension of liquidation has been lifted, but does not need to include specific liquidation instructions from Commerce to Customs. <u>Fujitsu</u>, 283 F.3d 1364; <u>Int'l Trading Co. v. United States</u>, 281 F.3d 1268, 1276 (Fed. Cir. 2002) (finding that publication of the final results of the administrative review in the Federal Register provided the requisite notice to Customs despite the fact that it did not include specific liquidation instructions). If Customs fails to timely liquidate the entries under the statute, the entries are deemed liquidated at the rate asserted at the time of entry. <u>Fujitsu</u>, 283 F.3d at 1376.

04-1085, -1109                                    6

On appeal, the government raises three points in support of its argument that the June 23, 2000 e-mail was ambiguous and insufficient notice for purposes of 19 U.S.C. § 1504(d): (1) The e-mail did not explicitly state that the suspension was lifted and appeared to be instead a request for information; (2) The e-mail did not contain the applicable duty rate; and (3) Commerce did not intend the e-mail to be a notice of removal of suspension.

With regard to the first point, the government argues that the Court of International Trade erred in finding that the June 23, 2000 e-mail constituted sufficient notice to begin the six-month statutory period because it was ambiguous. Namely, the government contends that because the e-mail sought information about unliquidated entries, it could have been referring to entries that Customs had liquidated erroneously while the suspension was in force. NEC disagrees, pointing out that there is no evidence to show that Commerce was concerned about improperly liquidated entries and that nowhere in the e-mail did Commerce request information about liquidated entries, only unliquidated ones. Accordingly, NEC argues that, far from making the e-mail ambiguous, the instruction to ignore liquidated entries confirmed that suspension of liquidation had been removed.

The Court of International Trade considered these same arguments in its decision and found the June 23, 2000 e-mail to be unambiguous. It held that "the juxtaposition [in the June 23, 2000 e-mail] of the mandate 'there should be no unliquidated entries' with the exception for certain goods for which a Commerce liquidation order 'continues to be enjoined' could only mean that there are no remaining suspensions, court-ordered or otherwise, on subject entries, except for those identified."

NEC, slip op. at 15. Thus, the e-mail "provide[d] unambiguously that any suspension of liquidation of NEC's entries had been removed." Id. at 15-16. Additionally, "Customs then posted the message to its Electronic Bulletin Board, which is apparently 'a familiar manner' for Customs to disseminate Commerce's liquidation information to Customs officials." Id. at 16.

We agree that the June 23, 2000 e-mail unambiguously provided notice to Customs that the suspension of liquidation on NEC's entries had been lifted. The first sentence of the first paragraph of the June 23, 2000 e-mail stated that "there should be no unliquidated entries of television receivers monochrome and color, from Japan . . . held by Customs for antidumping purposes during the period 03/10/1971 through 02/28/1999." The second sentence of the second paragraph of the e-mail identified the exception for televisions from another manufacturer, not NEC. Next, the first sentence of the third paragraph provided that, with the exception of the entries discussed in the second paragraph, if any Customs office was suspending liquidation on any of the entries, Customs officers should report the details of such entries to Commerce.

We read these provisions of the e-mail and the e-mail as a whole as giving notice to Customs that there was nothing preventing the entries of NEC from being liquidated, and thus, that the suspension of liquidation had been removed. The first line makes this clear and this reading is reinforced by the second provision that explicitly makes an exception only for certain entries other than NEC's that remain the subject of a court-ordered injunction. Further, while the third provision directs Customs to report unliquidated entries rather than to liquidate such entries, neither the statute nor our precedent requires that the notice give explicit instructions to liquidate or use particular

04-1085, -1109                             8

language in order to provide notice that the removal of suspension has occurred. See Fujitsu, 283 F.3d at 1383. We thus hold that the June 23, 2000 e-mail was sufficiently unambiguous to satisfy the requirements under 19 U.S.C. § 1504(d).

Second, in a related argument, the government states that the June 23, 2000 e-mail was insufficient under 19 U.S.C. § 1504(d), which requires a more specific and detailed form of notice, including the applicable duty rate. NEC responds that neither the statute nor this court's precedent supports the government's position. We agree. As correctly noted by the Court of International Trade, this court has never held that "informing Customs of the applicable duty rate was the exclusive alternative method of providing § 1504(d) notice or that is [sic] was a strict requirement." NEC, slip op. at 13. While this court held in International Trading that notice of the duty rate provides sufficient notice to Customs that the suspension had been lifted and in Cemex, S.A. v. United States that Customs cannot liquidate the entries without receiving the proper antidumping duty rate, neither the statute nor our precedent requires that the duty rate be included in the notice in order to satisfy the requirements of 19 U.S.C. § 1504(d). Cemex, 384 F.3d 1314, 1321 (Fed. Cir. 2004) (finding that Customs must liquidate the entries after the removal of suspension of liquidation when it receives, separately or otherwise, "notice of such removal and the proper antidumping duty rate"); Int'l Trading, 281 F.3d at 1276 (finding that "'notice' of the duty to be paid is, in effect, notice of the removal of suspension").

Finally, the government argues that the court must consider Commerce's purpose in sending the June 23, 2000 e-mail when determining whether the e-mail constitutes notice. NEC responds that the Court of International Trade properly

addressed this issue when it found that 19 U.S.C. § 1504(d) is directed toward the content of the message conveyed to Customs and not the intent of Commerce in delivering the message.

According to the Court of International Trade, "Commerce's purpose in issuing the e-mail . . . is irrelevant" and "[t]he only question is whether this message notified Customs that suspension had been lifted." NEC, slip op. at 15. Furthermore, the Court of International Trade squarely rejected the argument that the large bureaucratic nature of the government excuses the government's delay. "Commerce's self-imposed bureaucracy, however, is no excuse for delay. Commerce is aware of its statutory obligations and should have crafted its procedures accordingly." Id. at 12 n.15. The Court of International Trade flatly stated that administrative difficulties do not justify Commerce's undermining of "both the antidumping duty laws and Congress' intent to settle importers' liabilities promptly." Id.

We agree that Commerce's intent and the bureaucratic difficulty of conveying Commerce's intent is irrelevant. Rather, the relevant inquiry is whether Customs would or could have reasonably comprehended the e-mail as being unambiguous, a matter to which the government offered no direct evidence to support its position. Without any corroboration for the government's position, this court finds that a reasonable Customs official would have read the message to provide notification that any suspension of liquidation on the NEC entries had been removed. The e-mail did not merely inquire into the status of the unliquidated entries but unambiguously informed Customs that "there should be no unliquidated entries." (emphasis added). Therefore, whether or not Customs knew Commerce's intent was otherwise, the e-mail still gave Customs notice

that suspension had been lifted.  Accordingly, we conclude that the June 23, 2000 e-mail constitutes notice for purposes of 19 U.S.C. § 1504(d).

## C.  Ninth and Tenth Reviews

On cross-appeal, NEC argues that service of an opinion to attorneys at Justice created constructive notice to Customs that suspension of liquidation had been lifted as to the television sets imported in the ninth and tenth administrative periods.  Although acknowledging that this court has previously held that service of an opinion on Justice was not service on Customs because "[t]he Justice Department represented Commerce," Fujitsu, 283 F.3d at 1379, NEC attempts to distinguish this case from Fujitsu.  NEC emphasizes that in Fujitsu Justice was notified of a Federal Circuit decision determining the dumping margin, whereas in this case, Justice was notified of a Court of International Trade's decision ordering the lifting of suspension of liquidation.  NEC therefore argues that Customs had an interest in this case whereas it did not in Fujitsu.  NEC further attempts to distinguish Fujitsu by emphasizing an interrogatory response in this case by a Justice representative that he represented the "United States" and pointing out that Customs is an agency of the United States.

The Court of International Trade rejected NEC's argument.  According to the Court of International Trade, the Fujitsu holding that "service of an opinion on Justice was not service on Customs" is controlling precedent despite NEC's attempt to distinguish it.  NEC, slip op. at 17.  We agree.  We deny NEC's cross-appeal and hold that service of an opinion to attorneys at Justice does not constitute constructive notice to Customs.

## III.  CONCLUSION

We affirm the decision of the Court of International Trade and hold that the June 23, 2000 e-mail constituted notice for purposes of 19 U.S.C. § 1504(d).  We further hold that service on Justice did not constitute notice for purposes of 19 U.S.C. § 1504(d).

<u>AFFIRMED</u>