**FUJITSU GENERAL AMERICA, INC. (Successor-in-interest to Teknika Electronics Corp.), Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–1042.

United States Court of Appeals, Federal Circuit.

March 20, 2002.

Brian S. Goldstein, Duane, Morris & Heckscher LLP, of New York, NY, argued for plaintiff-appellant.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; and David M. Cohen, Director; of Washington, DC. Also on the brief was John J. Mahon, Assistant Branch Director, International Trade Field Office, of New York, New York. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, United States Customs Service, of New York, New York. Of counsel was Melanie A. Frank, Attorney, Office of Assistant Chief Counsel for Import Administration, Department of Commerce, of Washington, DC.

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

Plaintiff–Appellant Fujitsu General America, Inc. ("Fujitsu") is the successor-in-interest to Teknika Electronics Corp. ("Teknika"). Between 1986 and 1988, Teknika imported into the United States color televisions manufactured in Japan by Fujitsu General Limited (formerly known as General Corporation) ("Fujitsu General"). The color televisions that Teknika imported were subject to a 1971 antidumping finding. *See Television Receiving Sets, Monochrome and Color, From Japan,* 36 Fed.Reg. 4,597 (Dep't Treas. Mar. 10, 1971). Between November of 1997 and February of 1998, the United States Customs Service ("Customs") liquidated entries of the color televisions that occurred between March 20, 1986, and March 11, 1988, and assessed antidumping duties on the entries.[1] The liquidations followed litigation in the United States Court of International Trade between Fujitsu General and the government concerning the proper antidumping duty rate for the color televisions, during which Customs was enjoined by the court from liquidating the entries.

As the successor to Teknika, Fujitsu initiated three protests with respect to Customs' liquidation of the entries.[2] Fujitsu challenged the liquidation of the entries as untimely and the assessment of interest on the antidumping duties found to be due as unlawful. After Customs denied all three protests, Fujitsu brought suit in the Court of International Trade. Fujitsu contended that Customs had improperly failed to liquidate the entries within six months of having received notice that the injunction against liquidation had been removed. According to Fujitsu, pursuant to 19 U.S.C. § 1504(d),[3] that resulted in the entries being deemed liquidated at the rate of duty asserted on entry. Fujitsu also renewed its challenge to the assessment of interest. On cross-motions for summary judgment, the Court of International Trade granted summary judgment in favor of the United States. The court held that, as far as Fujitsu's first and second protests were concerned, it lacked jurisdiction to consider whether the entries at issue

---

1. To the extent relevant to this case, "liquidation" is "the final computation or ascertainment of the duties ... accruing on an entry." 19 C.F.R. § 159.1 (1997). *See Wolff Shoe Co. v. United States,* 141 F.3d 1116, 1118 (Fed.Cir.1998).

2. In the interest of clarity, we hereafter refer to Fujitsu as the importer of the televisions.

3. Unless otherwise indicated, all statutory references are to the 1994 version of the United States Code, the relevant provisions of which were in place (or substantively identical to provisions in place) during the relevant time period.

were deemed liquidated under section 1504(d). The court based its ruling on the fact that the deemed liquidation claims had not been raised before Customs by protest within 90 days of the challenged liquidations, as required by 19 U.S.C. § 1514(c)(3). *Fujitsu Gen. Am., Inc. v. United States*, 110 F.Supp.2d 1061 (Ct. Int'l Trade 2000) ("*Fujitsu*"). Next, the Court of International Trade addressed the deemed liquidation claim in Fujitsu's third protest. The court found that the claim had been timely raised in the protest. On the merits, the court determined that since the liquidation challenged in the protest had occurred less than six months after Customs received notice to liquidate the entries at issue, the entries were not deemed liquidated under section 1504(d). *Id.* at 1077. Finally, the court upheld the assessment of interest on the antidumping duties that had been found to be due. Fujitsu now appeals from the court's decision. We affirm.[4]

## BACKGROUND

### I.

The pertinent facts are not in dispute. As noted, the color televisions that were imported by Fujitsu were subject to an antidumping duty. *See* 19 U.S.C. § 1673. During the relevant period, antidumping duties assessed on color televisions from Japan were subject to periodic review by the United States Department of Commerce ("Commerce"). 19 U.S.C. § 1675(a)(1). After each review, duties were assessed retroactively on the entries

covered by the review, and future entries became subject to a deposit requirement at the dumping rate calculated in the review. *Id.*

In a series of periodic reviews published between 1981 and 1987, Commerce found the dumping margin for the color televisions imported by Fujitsu to be either zero or *de minimis*. *See Television Receiving Sets, Monochrome and Color, from Japan*, 46 Fed.Reg. 30,163 (Dep't Commerce, June 5, 1981); *Television Receiving Sets, Monochrome and Color, from Japan*, 50 Fed.Reg. 24,278 (Dep't Commerce, June 10, 1985); *Television Receiving Sets, Monochrome and Color, from Japan*, 52 Fed.Reg. 8,940 (Dep't Commerce, Mar. 20, 1987). Thereafter, in a subsequent review published on February 11, 1988, Commerce calculated a dumping margin of 4.06%. *Television Receiving Sets, Monochrome and Color, from Japan*, 53 Fed. Reg. 4050 (Dep't Commerce, Feb. 11, 1988). As a result of these reviews, the televisions imported by Fujitsu during the period from March 20, 1986 until February 11, 1988, required no cash deposit, while televisions imported by Fujitsu between February 11 and March 11, 1988, required a cash deposit of 4.06%. However, Customs did not liquidate the March 20, 1986—March 11, 1988 entries at issue at the above rates, since the administrative review process had been initiated with respect to the entries. *Fujitsu*, 110 F.Supp.2d at 1067.

On February 11, 1991, Commerce published the results of the administrative review that had been initiated with respect

---

4. On appeal, Fujitsu does not challenge the Court of International Trade's ruling that Customs properly assessed interest on the antidumping duties found to be due. Its sole contention is that no antidumping duties were

due, and hence no interest should have been assessed, because the entries at issue should have been deemed liquidated by operation of law at the rates of duty asserted on entry, which were either zero or *de minimis*.

to the 1986–1988 entries. *Television Receiving Sets, Monochrome and Color, from Japan,* 56 Fed.Reg. 5,392 (Dep't Commerce, Feb. 11, 1991). In that review, Commerce calculated a dumping margin for the entries of 35.40%. Fujitsu General, the manufacturer of the televisions, challenged the dumping margin determination by bringing an action in the Court of International Trade under 19 U.S.C. § 1516a(a)(2)(B)(iii). Pursuant to 19 U.S.C. § 1516a(c)(2), the court promptly enjoined Commerce from liquidating the 1986–1988 entries during the pendency of the litigation. *See Fujitsu,* 110 F.Supp.2d at 1065. In due course, the court granted Commerce's request to remand the case for a recalculation of the dumping margin. After Commerce reduced the dumping margin for the entries from 35.40% to 26.17% in its remand determination, the court affirmed the modified results of the administrative review. *See Fujitsu Gen. Ltd. v. United States,* 883 F.Supp. 728 (Ct. Int'l Trade 1995). Thereafter, on July 3, 1996, this court affirmed the Court of International Trade's approval of Commerce's 26.17% dumping margin determination. *See Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034 (Fed.Cir.1996) ("*Fujitsu General* "). The court's mandate issued on August 26, 1996, and Fujitsu General's time to petition for *certiorari* to the United States Supreme Court expired on October 1, 1996. *See Fujitsu,* 110 F.Supp.2d at 1065; 28 U.S.C. § 2101(c).

On September 16, 1997, Commerce published notice of the *Fujitsu General* decision in the Federal Register. *See* 62 Fed. Reg. 48,592 (Dep't Commerce, Sept. 16, 1997). Ten days later, on September 26, 1997, Commerce sent Customs an e-mail instructing it to liquidate the 1986–1988 entries at the affirmed 26.17% dumping margin. Pursuant to those instructions, Customs liquidated the entries on multiple occasions between November of 1997 and February of 1998.

Fujitsu filed three separate protests of the liquidations, under 19 U.S.C. § 1514. First, on February 11, 1998, Fujitsu filed Protest No. 2704–98–100059 ("Protest 1"), challenging Customs' assessment of interest in connection with the liquidation of entries on November 14, 1997, and December 5, 1997. *See Fujitsu,* 110 F.Supp.2d at 1065–66. One month later, Customs denied the protest. *See id.* at 1066. Thereafter, on April 15, 1998, Fujitsu sent Customs a letter in which it sought to supplement Protest 1 with a claim that the protested liquidations were improper because the entries previously had been "deemed liquidated" at the rate and amount of duties asserted at the time of entry more than a decade earlier. *See id.* Customs acknowledged receipt of the letter but refused to reconsider its denial of Protest 1. *See Fujitsu,* 110 F.Supp.2d at 1066.

On February 11, 1998, the same day it filed Protest 1, Fujitsu filed Protest No. 3001–98–100026 ("Protest 2"). In Protest 2, Fujitsu challenged Customs' assessment of interest on entries liquidated on November 28, 1997. *See id.* Thereafter, on March 30, 1998, before Customs had ruled on Protest 2, Fujitsu supplemented the protest. As in the Case of Protest 1, Fujitsu sought to add the claim that the challenged liquidation was unlawful because the entries were already deemed liquidated. *See id.* On April 22, 1998, Customs denied Protest 2. *See id.*

Finally, on March 24, 1998, Fujitsu filed Protest No. 5301–98–100053 ("Protest 3"). In that protest, Fujitsu challenged Customs' assessment of interest in connection with the liquidation of entries on February

27, 1998. *See id.* Subsequently, on April 1, 1998, Fujitsu supplemented Protest 3 with a deemed liquidation claim. Fujitsu sent its April 1, 1998 letter alleging deemed liquidation before Customs had ruled on Protest 3, and, unlike the deemed liquidation claims filed in connection with Protests 1 and 2, within ninety days of the protested liquidation. *See id.* Customs denied Protest 3 on April 10, 1998.

## II.

Fujitsu filed suit in the Court of International Trade to contest the denial of its protests.[5] In due course, the parties cross-moved for summary judgment. Thereafter, in an opinion issued on August 15, 2000, the Court of International Trade denied Fujitsu's motion and granted the government's. The court held that it lacked jurisdiction to hear the deemed liquidation claims asserted in connection with Protests 1 and 2 because the claims had not been timely raised before Customs. *See Fujitsu,* 110 F.Supp.2d at 1067–74. As far as Protest 3 was concerned, the court held that it had jurisdiction to adjudicate the deemed liquidation claim relating to the February 27, 1998, entries because Fujitsu had timely raised the claim before Customs. The court rejected the claim on the merits, however. The court concluded that Customs had liquidated the entries at issue within six months of receiving notice of the removal of the suspension of liquidation that had been in effect pending the litigation involving the final results of the administrative review, as required by 19 U.S.C. § 1504(d).[6] *See id.* at 1074–78. Fujitsu timely appealed the court's ruling. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

Fujitsu's appeal challenges two rulings of the Court of International Trade. The first ruling is the court's holding that it lacked jurisdiction to consider the deemed liquidation claims relating to Protests 1 and 2, because Fujitsu failed to timely protest either the liquidations of November 14 and December 5, 1997 (Protest 1), or the liquidation of November 28, 1997 (Protest 2). The second ruling is the court's holding that the entries whose liquidation Fujitsu challenged in Protest 3 were not deemed liquidated at the rate of duty asserted on entry.

Both the jurisdictional ruling relating to Protests 1 and 2 and the merits ruling relating to Protest 3 were based upon the Court of International Trade's interpretation of the relevant statutory provisions. We review the court's interpretation of those statutory provisions *de novo. See VWP of Am., Inc. v. United States,* 175 F.3d 1327, 1334 (Fed.Cir.1999). In Part I below, we address the jurisdictional issues relating to the deemed liquidation claims asserted in connection with Protests 1 and 2. In Part II, we address the merits of the deemed liquidation claim in Protest 3.

## I.

### A. *The jurisdictional scheme*

The jurisdiction of the Court of International Trade is set forth in 28 U.S.C.

---

**5.** Fujitsu filed two separate actions. Because the two actions essentially "shared the same legal issues as well as the same basic circumstances," the Court of International Trade consolidated them *sua sponte* with the parties' permission. *See Fujitsu,* 110 F.Supp.2d at 1066 n. 1.

**6.** The Court of International Trade also ruled that Customs properly assessed interest on the antidumping duties found to be due on the entries at issue. As noted above, that ruling is not before us.

§ 1581. The two provisions of the statute that are relevant to this case are sections 1581(a) and 1581(i).

■ Under section 1581(a), the Court of International Trade has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 is codified at 19 U.S.C. § 1515. Section 1515 provides for Customs' review and subsequent allowance or denial of protests that are "filed in accordance with" 19 U.S.C. § 1514. 19 U.S.C. § 1515(a). Section 1514(a) lists the decisions of Customs that may be the subject of protests. Included are decisions relating to "the liquidation or reliquidation of an entry." 19 U.S.C. § 1514(a)(5). Section 1514(a) states that a Customs decision that may be the subject of a protest shall be "final and conclusive upon all persons ... unless a protest is filed in accordance with this section." The time for filing a protest of a decision described in section 1514(a) is "within ninety days after notice of liquidation." 19 U.S.C. § 1514(c)(3). We have held that the Court of International Trade's authority to hear a claim under section 1581(a) depends upon the importer raising the claim in a valid protest filed with Customs within the prescribed 90–day period, or alternatively, in a protest coming within an exception that excuses a failure to meet the deadline. *See Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1345–46 (Fed.Cir.1995).

■ Section 1581(i) provides in pertinent part as follows:

In addition to the jurisdiction conferred upon the Court of International Trade

by subsection ... (a) of this section ..., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States ... that arises out of any law of the United States providing for ... administration and enforcement with respect to the matters referred to in ... subsection ... (a) ... of this section.

We have described section 1581(i) as embodying a "residual" grant of jurisdiction, *Conoco, Inc. v. United States Foreign–Trade Zones Bd.,* 18 F.3d 1581, 1584 n. 4 (Fed.Cir.1994), and we have stated that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 359 (Fed.Cir.1992) (quoting *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed.Cir. 1987)).

B. *Whether, under 28 U.S.C. § 1581(a), the Court of International Trade had jurisdiction over the deemed-liquidation claim relating to Protest 2*

■ Fujitsu points to 28 U.S.C. § 1581(a) and argues that the Court of International Trade erred in holding that it lacked jurisdiction over the deemed liquidation claim relating to Protest 2.[7] As just seen, subsection (c)(3) of section 1514 requires that an importer file a protest challenging a Customs decision within 90 days of receiving notice of liquidation. On February 11, 1998, Fujitsu timely filed Protest 2, challenging Customs' assessment of interest on the duties due on the

---

**7.** Fujitsu does not assert that the Court of International Trade erred in not asserting section 1581(a) jurisdiction with respect to the deemed liquidation claim relating to Protest 1.

entries liquidated on November 28, 1997. However, it submitted the letter raising its deemed liquidation claim on March 30, 1998, more than ninety days after liquidation. *See Fujitsu,* 110 F.Supp.2d at 1070. Consequently, unless the deemed liquidation claim came within a recognized exception to the 90–day deadline prescribed by section 1514(c)(3), the Court of International Trade lacked authority to review the claim under section 1581(a).

Fujitsu attempts to avail itself of such an exception by arguing that its deemed liquidation claim was a "new ground" in support of the original protest. The "new ground" exception to the 90–day filing requirement in 19 U.S.C. § 1514(c)(3) is found in 19 U.S.C. § 1514(c)(1). Section 1514(c)(1) provides in relevant part that "[n]ew grounds in support of objections raised by a valid protest ... may be presented for consideration in connection with the review of such protest pursuant to section 1515 of this title at any time prior to the disposition of the protest in accordance with that section."

In *Pagoda Trading Corp. v. United States,* 804 F.2d 665 (Fed.Cir.1986), we explained that in order for a supplemental deemed liquidation claim to qualify as a "new ground" in support of a timely protest, the timely protest must be sufficient to advise Customs that liquidation is being challenged, and the deemed liquidation claim must be raised before Customs rules on the protest. *Id.* at 668–69. Applying the two-part *Pagoda* standard, Fujitsu asserts that its timely protest of the assessment of interest put Customs on notice

that the liquidation of entries on November 28, 1997, was being challenged. It also asserts, and it is undisputed, that its March 30, 1998 filing of the deemed liquidation claim predated Customs' April 22, 1998 rejection of the protest. Therefore, Fujitsu argues, its deemed liquidation claim constituted a "new ground" in support of its timely protests of the assessment of interest. Accordingly, the Court of International Trade erred in failing to consider it under § 1581(a).

We are unable to agree with Fujitsu. In *Pagoda,* we stated that, in order to qualify as a "new ground" in support of a protest, a supplemental claim must "challenge[ ] the same 'decisions' as those challenged in the original protest." 804 F.2d at 668. The need to determine whether two claims challenge the same Customs decision, thus permitting the supplemental claim to satisfy the requirements for a "new ground," follows from the language of 19 U.S.C. § 1514(a). Section 1514(a) sets forth the protestable "decisions of the Customs Service." In doing so, it lists "all charges or exactions" in section 1514(a)(3) separately from "the liquidation or reliquidation of an entry" in section 1514(a)(5).[8] In other words, the statute identifies charge or exaction decisions, such as the interest assessments in this case, as separate and distinct from liquidation decisions.

The conclusion that interest assessments and liquidations involve different Customs decisions for purposes of section 1514 is supported by *New Zealand Lamb Co. v. United States,* 40 F.3d 377 (Fed.Cir.1994). At issue in that case were eight entries of

---

**8.** We have held that Customs' assessment of interest falls within the "all charges and exactions" language of section 1514(a)(3). *See, e.g., Castelazo & Assocs. v. United States,* 126 F.3d 1460, 1462 (Fed.Cir.1997). Thus, when

Fujitsu protested the assessment of interest on antidumping duties that Commerce had found to be due, it was lodging a section 1514(a)(3) protest.

lamb meat by New Zealand Lamb. Customs effected final liquidation of six of the entries on December 15, 1989, and two of the entries on December 22, 1989. When it did so, it determined that countervailing duties were due in an amount greater than what had been deposited for estimated duties. It therefore assessed such additional duties when it liquidated the two sets of entries. *Id.* at 378–79. Subsequently, on March 23, 1990, Customs billed New Zealand Lamb for interest on the additional duties. The billing came ninety-nine days after the six December 15, 1989 liquidations and ninety-two days after the December 22, 1989 liquidations. On June 21, 1990, exactly ninety days after it was billed for the interest, New Zealand Lamb filed a protest with Customs pursuant to 19 U.S.C. § 1514(c), in which it challenged the assessment of interest. *Id.* at 379.

In *New Zealand Lamb*, we considered whether the protest of Customs' assessment of interest on the countervailing duties, which was filed more than ninety days after liquidation but within ninety days of the interest assessment, was timely under § 1514(c). We held that the protest was timely. In so holding, we rejected the government's argument that, by operation of 19 U.S.C. § 1677g (1988), the eight liquidations for increased countervailing duties amounted to assessments of interest, irrespective of whether interest was mentioned in the bulletin notices liquidating the entries.[9] *Id.* at 381. We noted that interest on the underpayment of duties was a charge within the "jurisdiction of the Secretary of the Treasury" under 19 U.S.C. § 1514(a)(3). Continuing, we stated that there could not be a deci-

sion on a charge for purposes of starting the running of a limitations period until the party levying the charge announced that the charge was being levied and stated the amount of the charge, or the method of computing the charge. *Id.* at 382. We concluded:

> [T]he liquidations in this case, which made no mention of interest, were not decisions regarding interest for purposes of starting the running of the § 1514 limitations period against New Zealand Lamb. Such a decision did not come until March 23, 1990, when Customs billed New Zealand Lamb for the interest.

*Id.* (footnote omitted). *See also Castelazo*, 126 F.3d at 1463 (stating that under section 1514 "Customs' decisions on charges or exactions, such as assessed interest, are independent of its decisions on liquidation or reliquidation.").

Fujitsu's deemed liquidation claim relating to Protest 2 was not timely under section 1514(c)(3). Neither did the claim constitute a "new ground" in support of the challenge to the assessment of interest in Protest 2. For these reasons, the Court of International Trade did not err in refusing to assert jurisdiction over the claim under 28 U.S.C. § 1581(a).

C. *Whether, under 28 U.S.C. § 1581(i), the Court of International Trade had jurisdiction over the deemed liquidation claims relating to Protests 1 and 2*

Alternatively, Fujitsu contends that 28 U.S.C. § 1581(i) vested the Court of International Trade with the authority to review

---

9. Section 1677g provides, in relevant part, that "[i]nterest shall be payable on ... underpayments of amounts deposited on merchan-

dise entered ... for consumption on and after the date of publication of a countervailing ... duty order." 19 U.S.C. § 1677g(a).

its deemed liquidation claim relating to Protest 2. It also contends that the statute gave the court authority to review its deemed liquidation claim relating to Protest 1. We disagree. Fujitsu's argument runs afoul of the rule, noted above, that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Norcal/Crosetti Foods*, 963 F.2d at 359 (quoting *Miller*, 824 F.2d at 963).

■ In this case, "jurisdiction under another subsection of § 1581 could have been available," and "the remedy provided under that other subsection" would not have been "manifestly inadequate." Fujitsu could have invoked the jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(a) if, pursuant to 19 U.S.C. § 1514(a)(5), it had timely protested the liquidations of November 14 and December 5, 1997 (Protest 1), and the liquidation of November 28, 1997 (Protest 2). Indeed, Fujitsu was able to invoke the jurisdiction of the court in the case of its challenge to the liquidation of February 27, 1998 (Protest 3), because it timely protested the liquidation.

■ Generally, an importer's failure to file a timely protest precludes the Court of International Trade from exercising its section 1581(i) residual jurisdiction. *See Juice Farms*, 68 F.3d at 1346. Fujitsu argues, nevertheless, that our decision in *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550 (Fed.Cir.1997), supports its contention that the Court of International Trade erred in not invoking its § 1581(i) jurisdiction to consider Fujitsu's deemed liquidation claims. *Cherry Hill* does not help Fujitsu, however.

In *Cherry Hill*, Cherry Hill Textiles, Inc., ("Cherry Hill") imported textile-dyeing machines from Taiwan. The machines were entered as duty free through the Port of Newark, New Jersey, on September 18, 1987. On October 28, 1988, more than thirteen months after the date of entry, Customs liquidated the entry as dutiable in the amount of $12,220.62. *Cherry Hill*, 112 F.3d at 1551. Customs gave notice to Cherry Hill of the liquidation and subsequently demanded payment from Cherry Hill's surety, International Cargo & Surety Insurance Co. ("IC & S") under its bond. IC & S refused to make payment. It did not, however, file a formal protest under 19 U.S.C. § 1514 of either the liquidation or the demand for payment. *Id.*

After the 90-day period for filing a protest had passed, the government filed an enforcement action in the Court of International Trade in which it sought to recover the $12,220.62 in assessed duties. In due course, the government moved for summary judgment. In so doing, it contended that IC & S's failure to file a protest against either the liquidation or the demand for payment under the bond rendered the October 28, 1988, liquidation "final and conclusive" within the meaning of 19 U.S.C. § 1514(a), so that judicial review of IC & S's affirmative defenses was precluded. IC & S argued in response that the provision of section 1514(a) that makes unprotested liquidations "final and conclusive" applies to actions brought by importers or sureties to recover excess duty deposits, but not to government enforcement actions for unpaid duties. The Court of International Trade rejected IC & S's argument and granted summary judgment for the government in the full amount of the assessed duties, plus interest. *Id.* IC & S then appealed to this court.

We framed the issue before us in *Cherry Hill* as follows:

> It is undisputed that an administrative protest must be filed if an importer or surety wishes to file suit in the Court of International Trade challenging the liquidation of a Customs entry. The principal issue in this case is whether an importer or surety must file such an administrative protest if the importer or surety wishes to defend against a government enforcement action for the underpayment of duties by challenging the lawfulness of a liquidation.

*Id.* at 1552. On appeal, IC & S advanced two contentions. First, it argued that the protest requirement of section 1514 applies to actions brought by importers or sureties for the refund of duties paid, but that it does not apply to enforcement actions brought by the government to collect underpayments of duties. *Cherry Hill*, 112 F.3d at 1551. Accordingly, IC & S claimed that it was entitled to challenge the government's enforcement action, even though it had not filed a timely protest of the liquidation with Customs. We rejected this argument. In so doing, we stated: "The language of section 1514, that a liquidation will be 'final and conclusive' unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit." *Id.* at 1557.

IC & S also argued that summary judgment should not have been granted in favor of the government because the entry of September 18, 1987, was "deemed liquidated" by operation of law when Customs failed to liquidate it within one year of the date of entry. *See* 19 U.S.C. § 1504(a).

IC & S urged that it should not have been required to protest the October 28, 1988, liquidation in order to be entitled to argue later that Customs was legally foreclosed from liquidating the entry anew after the entry had already been deemed liquidated. *Cherry Hill*, 112 F.3d at 1558. We looked more favorably on this argument by IC & S, which we characterized as a "narrower ground for reversal." *Id.* We pointed out that in *United States v. Sherman & Sons Co.*, 237 U.S. 146, 35 S.Ct. 520, 59 L.Ed. 883 (1915), the Supreme Court concluded that "an importer who is subjected to a reliquidation based on a charge of fraud is not relegated to the protest and appeal mechanism, but may challenge the finding of fraud in a government enforcement action brought in court even if the importer filed no protest of the reliquidation." *Cherry Hill*, 112 F.3d at 1554 (citing *Sherman*, 237 U.S. at 158, 35 S.Ct. 520). We reasoned in *Cherry Hill* that " 'deemed liquidation' under section 1504 has the same effect as the expiration of the time for reliquidation in *Sherman*: it subjects any further collection efforts by the government in connection with the same entry to dismissal for failure to state a claim upon which relief can be granted." *Id.* at 1559.[10] Accordingly, we held that IC & S could raise deemed liquidation as a defense in the government's enforcement action.

The critical difference between *Cherry Hill* and this case, of course, is that Fujitsu is not seeking to use its deemed liquidation claim as a shield in a government enforcement action. Rather, it is seeking to use the claim as a sword in a refund action under 28 U.S.C. § 1581(i). As noted above, the *Cherry Hill* court recognized that "[i]t is undisputed that an administrative protest must be filed if an importer or

---

**10.** The reliquidation in *Sherman* came more than one year after the original liquidation.

surety wishes to file suit in the Court of International Trade challenging the liquidation of a Customs entry." 112 F.3d at 1552. In addition, as discussed above, jurisdiction may not be invoked under § 1581(i) "when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Norcal/Crosetti Foods,* 963 F.2d at 359 (quoting *Miller,* 824 F.2d at 963). That plainly is not the case here since, as already noted, Fujitsu could have timely protested Customs' purported liquidations under 19 U.S.C. § 1514(a)(5). In that event, the Court of International Trade would have had jurisdiction over Fujitsu's suit under 28 U.S.C. § 1581(a). We agree with the Court of International Trade that "[t]o find that *Cherry Hill* affords Fujitsu jurisdiction under 28 U.S.C. § 1581(i) to raise its deemed liquidation argument in the circumstances of this case would require us to create an exception to the well-established [rule with respect to] § 1581(i) [jurisdiction] that we are unwilling to make." *Fujitsu,* 110 F.Supp.2d at 1073. Accordingly, we will not disturb the Court of International Trade's ruling that it lacked jurisdiction under section 1581(i) to consider Fujitsu's Protest 1 and Protest 2 deemed liquidation claims.

## II.

We turn now to Fujitsu's deemed liquidation claim relating to the entries that Customs liquidated on February 27, 1998 (Protest 3). The Court of International Trade exercised jurisdiction over this claim because Fujitsu timely asserted it in connection with Protest 3 on April 1, 1998. On the merits, the court rejected Fujitsu's argument that the failure of Customs to liquidate the entries within six months of

our July 3, 1996, decision in *Fujitsu General* meant that, pursuant to 19 U.S.C. § 1504(d), the entries were deemed liquidated at the rate of duty asserted at entry.

A. *Decision of the Court of International Trade on Fujitsu's deemed liquidation claim relating to Protest 3.*

■ Section 1504(d) governs the deemed liquidation of entries whose liquidation previously was suspended by a court order. The statute provides that, except in circumstances not relevant here,

> when a suspension [of liquidation] required by ... court order is removed, the Customs Service shall liquidate the entry ... within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry ... not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d). Thus, in order for a deemed liquidation to occur, (1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice. The Court of International Trade rejected Fujitsu's deemed liquidation claim because it ruled that Customs had liquidated the entries at issue within six months of September 16, 1997, the date on which Commerce published notice in the Federal Register that the injunction suspending liquidation had been removed. 110 F.Supp.2d at 1077.

In analyzing Fujitsu's claim, the Court of International Trade first addressed the question of when the suspension of liquidation that was imposed during the *Fujitsu General* litigation was "removed" for purposes of section 1504(d). The court pointed out that 19 U.S.C. § 1516a(e) "explains how liquidation will proceed where entries are subject to a determination that is being judicially reviewed pursuant to § 1516a." *Id.* at 1075. Section 1516a(e) provides as follows:

**(e) Liquidation in accordance with final decision**

If the cause of action is sustained in whole or in part by a decision of the United States Court of International Trade or of the United States Court of Appeals for the Federal Circuit—

> (1) entries of merchandise of the character covered by the published determination of the Secretary, the administering authority, or the Commission, which is [sic] entered, or withdrawn from warehouse, for consumption after the date of publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision, and

> (2) entries, the liquidation of which was enjoined under subsection (c)(2) of this section,

shall be liquidated in accordance with the final court decision in the action. Such notice of the court decision shall be published within ten days from the date of the issuance of the court decision.

Liquidation of the Protest 3 entries was enjoined pursuant to 19 U.S.C. § 1516a(c)(2). The Court of International Trade determined that, as used in section 1516a(e), the term "final" means "conclu-

sive" and that a court decision is conclusive when it can no longer be appealed. *Fujitsu*, 110 F.Supp.2d at 1075. The court reasoned that our decision of July 3, 1996 in *Fujitsu General* could not have served as notice to Customs of the removal of the court-ordered suspension because, under section 1516a(e)(2), the injunction did not dissolve on that date. Rather, the injunction dissolved on October 1, 1996, when "the time allowed for applying for a writ of certiorari for review in the U.S. Supreme Court expired." *Id.* In reaching its conclusion as to when our decision in *Fujitsu General* became "final," the Court of International Trade relied on decisions of this court holding that a decision of the Court of International Trade is not "final" for purposes of section 1516a(e) when it has been appealed to the Federal Circuit. *See Hosiden Corp. v. Advanced Display Mfrs. of America*, 85 F.3d 589, 591 (Fed. Cir.1996); *Timken Co. v. United States*, 893 F.2d 337, 339–40 (Fed.Cir.1990).

Having determined that our decision in *Fujitsu General*, which caused the suspension of liquidation to be removed, became final on October 1, 1996, the Court of International Trade turned to the question of when Customs received notice that the suspension had been removed. Preliminarily, the court rejected the proposition that issuance of the *Fujitsu General* decision itself constituted notice for purposes of section 1504(d). Noting that "Customs' role in antidumping matters is purely ministerial," *see Mitsubishi Elects. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir.1994), the court stated that it would not "attribute notice to Customs of a court decision reviewing a Commerce determination made under 19 U.S.C. § 1516a(a) without publication of notice of the court decision by Commerce in the Federal Register." *Fujitsu*, 110 F.Supp.2d at 1077

**1378**

(footnote omitted). Accordingly, the court held that Customs received notice of the removal of the suspension of liquidation relating to the entries at issue in Protest 3 only when Commerce[11] published the following notice in the Federal Register on September 16, 1997:

> As there is now a final and conclusive court decision in this action, we are amending our final results of review in this matter and we will subsequently instruct the U.S. Customs Service to liquidate entries subject to this review.... Pursuant to 19 U.S.C. § 1516a(e), we are now amending the final results of administrative review for television receivers, monochrome and color, from Japan, with respect to [Fujitsu General Limited], for the above-referenced periods. The revised weighted-average margin for these periods is 26.17 percent.

62 Fed.Reg. 48,952. The court also rejected the government's argument that Customs did not receive notice of the removal of the suspension of liquidation until Commerce e-mailed liquidation instructions to Customs on September 26, 1997. *See Fujitsu*, 110 F.Supp.2d at 1077.

The Court of International Trade ruled that since Customs had liquidated the Protest 3 entries on February 27, 1998, within six months of the September 16, 1997 Federal Register notice, the requirements for deemed liquidation under 19 U.S.C. § 1504(d) were not met. *Id.* at 1077.

The Court of International Trade recognized the long delay between October 1, 1996, when "the court-ordered injunction dissolved," and September 16, 1997, when Commerce finally published the required notice in the Federal Register. *Id.* at 1078. It declined, however, to hold that Fujitsu's merchandise was deemed liquidated because of Commerce's delay in publishing notice of the removal of the suspension of liquidation. The court reasoned that such a remedy would be overly broad and would constitute a windfall to Fujitsu, especially since Fujitsu could have brought an action under 28 U.S.C. § 1581(i)(4) to compel Commerce to publish notice and give liquidation instructions to Customs. *See id.* (citing *Am. Permac, Inc. v. United States*, 642 F.Supp. 1187, 1192 n. 8 (Ct. Int'l Trade 1986)) (importer may prevent Commerce delay in issuing liquidation instructions by bringing mandamus action); *see also Timken*, 893 F.2d at 342 (affirming grant of importer's application for a writ of mandamus forcing Commerce to publish notice of court decision). The court therefore granted the government's motion for summary judgment.

### B. *Fujitsu's appeal*

Fujitsu challenges the Court of International Trade's rejection of its deemed liquidation claim relating to Protest 3. Pointing to the statutory language that permits Customs to receive notice of the removal of a suspension of liquidation from "the Department of Commerce, other agency, or a court with jurisdiction over the entry," 19 U.S.C. § 1504(d), Fujitsu asserts that through the decision in *Fujitsu General*, Customs was provided with notice of the removal of the suspension of liquidation. Fujitsu argues that since *Fujitsu General*

---

**11.** As seen above, section 1516a(e) refers to "publication in the Federal Register by the Secretary or the administering authority of a notice of the court decision." The term "Secretary" refers to the Secretary of the Treasury. *See* 19 U.S.C. § 1516a(f)(4). The term "administering authority" refers to the Secretary of Commerce. *See* 19 U.S.C. §§ 1516a(f)(1), 1677(1).

issued on July 3, 1996, and since Customs did not liquidate the Protest 3 entries until more than six months later, on February 27, 1998, the requirements of 19 U.S.C. § 1504(d) for deemed liquidation were met. Consequently, the Protest 3 entries were deemed liquidated at the rate of duty asserted at the time of entry, which was zero.

The question we must answer is this: When, as a matter of law, did Customs receive notice of the removal of the suspension of liquidation? If, as Fujitsu argues, notice was received on July 3, 1996, when *Fujitsu General* issued, Fujitsu wins. The reason is that more than six months passed before Customs liquidated the entries on February 27, 1998. If, as the Court of International Trade held, notice was received on September 16, 1997, when Commerce published notice of the removal in the Federal Register, the government wins. The reason is that Customs liquidated the entries within six months of that date, on February 27, 1998.

■■■ (1) Preliminarily, we agree with the Court of International Trade that the suspension of liquidation was removed on October 1, 1996, when the time for petitioning the Supreme Court for a writ of *certiorari* expired. In *Timken*, 893 F.2d 337, we addressed the question of whether a decision of the Court of International Trade that was on appeal to the Federal Circuit was "final" for purposes of 19 U.S.C. § 1516a(e). Answering the question we stated: "We are of the opinion that an appealed CIT decision is not a 'final court decision' within the plain meaning of § 1516a(e)." *Id.* at 339. We explained that, in section 1516a(e), the term "final

court decision" must be read together with the words that follow it: "in the action." We reasoned that "[a]n 'action' does not end when one court renders a decision but continues through the appeal process." *Id.* We see no reason not to extend the logic of *Timken* to the question before us in this case.[12] We do not think that, for present purposes, the "appeal process" in a case is completed until all possible appeals are exhausted. Thus, there is not a "final court decision" in an action that originates in the Court of International Trade and in which there is an appeal to the Federal Circuit until, following the decision of the Federal Circuit, the time for petitioning the Supreme Court for *certiorari* expires without the filing of a petition.

■■■ (2) Having determined that the suspension of liquidation was removed on October 1, 1996, we turn to the question of notice. As already seen, section 1504(d) requires that Customs receive notice that a suspension of liquidation has been removed from "the Department of Commerce, other agency, or a court with jurisdiction over the entry." There is no evidence in the record that Customs received such notice prior to September 16, 1997. It is true, as Fujitsu points out, that on or about July 3, 1996, the Clerk of the Federal Circuit served counsel for the government, the Department of Justice, with the decision in *Fujitsu General.* That fact does not help Fujitsu, however. The Justice Department represented Commerce, not Customs, before this court. Service of the *Fujitsu General* decision upon it did not constitute notice to Customs.

Fujitsu argues, nevertheless, that our decision in *Fujitsu General* was available

---

**12.** In *Timken,* we expressly declined to consider the question of "whether a decision of [the Federal Circuit] is 'final' within the meaning of § 1516a(e) before the time for application for certiorari to the Supreme Court expires." 893 F.2d at 340 n. 5.

in a variety of commercially available print and electronic media, thus providing Customs with notice for purposes of 19 U.S.C. § 1504(d). The problem with this argument is that the statute requires that Customs receive notice that a suspension of liquidation has been removed from "the Department of Commerce, other agency, or a court with jurisdiction over the entry." General print or electronic media publication does not satisfy that requirement. In any event, there is no evidence that in fact Customs received general media notice of the *Fujitsu General* decision.

(3) Because no earlier date qualifies, we hold that September 16, 1997 is the earliest date upon which Customs could be deemed to have received notice of the removal of the suspension of liquidation. That is the date upon which Commerce published notice of the *Fujitsu General* decision in the Federal Register.

The government argues, however, that the correct notice date is September 26, 1997, when Commerce e-mailed liquidation instructions to Customs. As noted above, the Court of International Trade rejected that view and ruled that September 16, 1997, was the date upon which notice was received. We agree with the Court of International Trade that it was Commerce's publication of notice of the *Fujitsu General* decision in the Federal Register on September 16, 1997, that constituted notice to Customs under section 1504(d) that the suspension of liquidation had been removed.

Our recent decision in *International Trading Co. v. United States*, 281 F.3d

1268 (Fed.Cir. 2002), is instructive. In that case, the liquidation of certain entries of merchandise subject to an antidumping order was suspended while Commerce undertook an administrative review of the order. The suspension of liquidation was pursuant to 19 U.S.C. § 1673b(d).[13] On February 12, 1996, Commerce published the final results of the administrative review in the Federal Register. The Final Results announced an antidumping duty rate of 42.31% for the merchandise. *Id.* at 1270. The next day, Commerce sent an e-mail message to Customs. In the message, Customs referred to the Federal Register entry of the previous day and noted that the administrative review had been completed. However, it told Customs not to liquidate any entries covered by the review until it received liquidation instructions. *Id.* at 1270–71. More than six months later, on August 29, 1996, Commerce sent an e-mail message to Customs directing it to assess antidumping duties at the rate of 42.31% on the merchandise. The e-mail message stated that the instructions constituted the removal of the suspension of liquidation that had been in effect during the administrative review. Less than six months later, in October of 1996, Customs liquidated the entries and assessed antidumping duties at the rate of 42.31% of the entered value. *Id.* at 1270–71.

International Trading Company ("ITC"), the importer of the merchandise, filed a formal protest. In the protest, it argued that the entries were deemed liquidated by

---

**13.** Section 1673b(d) provides, in part, that after an affirmative preliminary determination that there exists "a reasonable basis to believe or suspect that the merchandise is being sold, or is likely to be sold, at less than fair value," the administering authority (Commerce) "shall order the suspension of liqui-

dation of all entries of merchandise subject to the determination." Simply put, "[l]iquidation is suspended ... because it is not possible ... to determine what duties will be assessed against those entries." *Int'l. Trading,* 281 F.3d at 1272.

operation of law under 19 U.S.C. § 1504(d) at the rate asserted at entry, which was the deposit rate of 2.72%. ITC contended that the entries were deemed liquidated because Customs had failed to liquidate them within six months after receiving notice of the removal of the suspension of liquidation. *Id.* at 1271. After Customs denied the protest, ITC filed an action in the Court of International Trade, in which it asserted that the entries should have been deemed liquidated at the deposit rate.

The Court of International Trade held that the statutory suspension of liquidation had been removed upon the publication of the final results of the administrative review and that the e-mail message sent to Customs the following day provided notice to Customs that the suspension of liquidation had been lifted. *Int'l. Trading Co. v. United States,* 110 F.Supp.2d 977, 988 (Ct. Int'l Trade 2000). Accordingly, the court concluded that Customs had failed to liquidate the entries within six months after receiving notice of the removal of the suspension of liquidation. The court therefore held that the entries were deemed liquidated at the 2.72% deposit rate. *Id.* The government appealed the ruling to this court.

On appeal, we affirmed the decision of the Court of International Trade that the entries at issue were deemed liquidated under 19 U.S.C. § 1504(d). In so doing, we determined that Commerce's publication of the final results of the administrative review in the Federal Register constituted notice to Customs within the

meaning of section 1504(d). *Int'l. Trading,* 281 F.3d at 1275. We stated:

> [T]he date of publication provides an unambiguous and public starting point for the six-month liquidation period, and it does not give the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation. Beyond that, treating the date of notification as separate from the date of publication could lead to messy factual disputes about when Customs actually received notice of the removal of the suspension of liquidation. As in this case, the courts would be required to referee debates about what kind of communication from Commerce relating to the announcement of the final results constituted a qualifying "notice" of the removal of suspension.

*Id.* at 1275–76.

We think the rationale articulated in *International Trading* applies in this case. The Court of International Trade enjoined liquidation in *Fujitsu General* pending the litigation. It did so pursuant to 19 U.S.C. § 1516a(c)(2).[14] Thereafter, the suspension of liquidation was removed when the litigation came to an end. It is just as important that there be "an unambiguous and public starting point for the six-month liquidation period" under these circumstances as it is when liquidation of entries

---

**14.** Section 1516a(c)(2) provides that "the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the ... administering authority ... upon request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances."

is suspended pending an administrative review and thereafter the suspension is removed when the final results of the review are announced. We therefore conclude that Customs received notice of the removal of the suspension of liquidation on September 16, 1997, when Commerce published notice of the *Fujitsu General* decision in the Federal Register. As noted above, in the Federal Register notice, Commerce stated that it would be instructing Customs to liquidate the 1986–1988 entries. This was the first notification that the suspension of liquidation was being removed. Because Customs liquidated the Protest 3 entries less than six months later, on February 27, 1998, the requirements of 19 U.S.C. § 1504(d) for deemed liquidation were not met.

(4) Fujitsu argues, however, that Customs' liquidation of the Protest 3 entries within six months of the Federal Register notice does not end the issue. As it did in the Court of International Trade, it points to 19 U.S.C. § 1516a(e). As seen above, that statute provides that if a "cause of action is sustained in whole or in part by the United States Court of Appeals for the Federal Circuit[,] ... entries, the liquidation of which was enjoined under [19 U.S.C. § 1516a(c)(2)], shall be liquidated in accordance with the final court decision in the action." The statute further provides that "notice of the court decision shall be published within ten days from the date of the issuance of the court decision."[15] Fujitsu focuses on the fact that although the *Fujitsu General* decision issued on July 3, 1996, it was not until September 16, 1997, that Commerce published notice of the decision in the Federal Register. Fujitsu

argues that the government should not be allowed to "sidestep" the six-month limitation period in 19 U.S.C. § 1504(d) by having Commerce ignore for over a year the ten-day publication requirement in section 1516a(e).

Commerce's unexplained delay in publishing notice of the *Fujitsu General* decision, frustrating though it may be, does not change the result in this case. Section 1504(d) and section 1516a(e) are separate statutes. Section 1504(d) governs deemed liquidation. Deemed liquidation under section 1504(d) can occur only if Customs fails to liquidate entries within six months of having received notice of the removal of a suspension of liquidation. In addition, there is no language in section 1516a(e) that attaches a consequence to a failure by Commerce to meet the ten-day publication requirement, let alone the consequence of deemed liquidation under section 1504(d). *See Canadian Fur Trappers Corp. v. United States,* 884 F.2d 563, 566 (Fed.Cir. 1989) (government's failure to meet a statutory deadline for the liquidation of entries under a prior version of section 1504, in the absence of "consequential language" associated with the deadline, did not result in a deemed liquidation). Under these circumstances, there simply is no basis upon which we could hold that because Commerce failed to timely publish notice of our decision in *Fujitsu General,* the entries at issue in Protest 3 were deemed liquidated under 19 U.S.C. § 1504(d).

■ Finally, a ruling that a deemed liquidation under section 1504(d) results from Commerce's failure to comply with section 1516a(e)(2) would necessarily

---

**15.** Fujitsu General's "cause of action" challenged the 35.40% antidumping duty rate found in the administrative review. There is therefore no dispute that the cause of action

was "sustained in whole or in part" by our decision in *Fujitsu General,* which affirmed Commerce's determination, on remand, of a reduced 26.17% antidumping duty rate.

equate the former provision's requirement that Customs receive notice of the removal of a suspension of liquidation with the latter provision's instruction to publish "notice of the court decision." 19 U.S.C. §§ 1504(d), 1516a(e)(2). However, the publication of a court decision in a case does not necessarily result in Customs' receipt of notice that a suspension of liquidation that was in effect during the case has been removed. For example, our decision in *Fujitsu General* does not even mention the suspension of liquidation that was ordered by the Court of International Trade. We do not think it would be consistent with the statutory scheme to hold that Commerce's publication of notice of a court decision and Customs' receipt of notice are synonymous for purposes of starting the six-month time period for liquidation in section 1504(d).[16] *See Mitsubishi*, 44 F.3d at 977 ("Customs has a merely ministerial role in liquidating antidumping duties....").

**CONCLUSION**

The Court of International Trade did not err in holding that it lacked jurisdiction to consider Fujitsu's deemed liquidation claims relating to Protests 1 and 2. Neither did the court err in rejecting Fujitsu's deemed liquidation claim relating to Protest 3. Accordingly, the decision of the court is

AFFIRMED.

No costs.

---

**16.** To the extent that Congress intended to equate the publication instruction in § 1516a(e)(2) with the notice requirement of § 1504(d), it could have—as it did in 19 U.S.C. § 1675(a)(3)(C), requiring Commerce to publish the results of administrative reviews concerning entries whose liquidation is enjoined—mandated that Commerce publish "the final disposition and issue instructions to the Customs Service with respect to the liquidation of entries pursuant to the review." However, instead of requiring the publication of liquidation instructions, thus potentially evincing an intent to effect notice of the suspension's removal, section 1516a(e)(2) simply instructs Customs to publish notice of the court decision.